[Crim. No. 908.   Fourth Dist.   Nov. 20, 1951.]

THE PEOPLE, Respondent, v. ALICE CORDELIA
GRISCHOTT, Appellant.

Theo G. Krumm for Appellant.

Edmund G. Brown, Attorney General, and Dan Kaufmann,
Deputy Attorney General, for Respondent.

GRIFFIN, J. — Defendant and appellant Alice Cordelia
Grischott was charged jointly in two counts of an information
with defendants Francis W. Richards, Billy Jones and James
D. Hunt, with the crime of burglarizing two furniture stores

on the same evening. Appellant plead not guilty. The other defendants entered pleas of guilty. A jury verdict resulted in appellant's conviction on both counts. She appealed and questions the sufficiency of the evidence to show that she aided and abetted the other defendants in the commission of the offenses.

The evidence shows that on the night of December 10, 1950, about 3:30 a.m., a police officer caught the named defendants in the store of the Vanderwall Furniture Company, in Redlands, hiding behind a counter. They had been endeavoring to open a safe by means of a sledge hammer. They had, a few minutes previous to this time, entered another near-by furniture store and were unsuccessful in breaking open the safe located therein. The officer handcuffed them and put them in a police car which was parked behind the store about 50 feet east of an alley. Immediately thereafter appellant drove up behind them through the alley and stopped. The officers went to her and asked her what she was doing in that alley at that time of the morning. She remarked that she was after some fellows she was supposed to pick up there, and mentioned the names of the defendants Richards and Jones; that she had brought them to Redlands "to do some work." She was also taken into custody. She later mentioned she had left the three defendants out close to another near-by furniture store and that she thereafter picked them up and drove them to this alley back of the furniture store where they were later apprehended; that she drove down the street and waited for them at their suggestion; that she got tired of waiting and decided to come back to see why it had taken them so long. In another conversation the officers asked her what part she had played in the burglary on that night and she stated that defendant Jones asked her to drive her car for him to a place on D Street in San Bernardino; that she did so and stayed there until about 1:30 a.m.; that the other two defendants came out, got in the car, and asked her to drive them to Redlands because they "had a job to do." One of them told appellant that they were going to buy her some gasoline for her car. She stated she drove the defendants over to Redlands. She told the officers that there was a sack of tools in the car.

Defendant Richards testified that by prearrangement to "pull these jobs" he met defendants Hunt and Jones at Jones's home in San Bernardino; that when he arrived the appellant was seated at the wheel of the car; that Hunt asked him if he was ready and he said he was, and they drove away

without further instructions; that there was a gunny sack with tools in it on the floor of the back seat compartment; that when they arrived to a place near the first furniture store Hunt gave instructions to appellant to stop and told her that they were going over to see a fellow ''for something''; that he took the sack of tools and the three defendants then departed and entered the store through a window, but that they were unsuccessful in breaking open the safe; that they returned to the car with the sack of tools, and remarked that ''we missed the fellow'' and stated that they were going down the street and see if they could find him at another place. Hunt was wearing a jacket which he had appropriated in that furniture store. Richards then testified that Hunt gave orders to appellant where to drive; that she pulled up to the curb about a block from the second furniture store; that the defendants all got out, took the sack of tools, walked to the alley, jimmied the lock, entered that store, and knocked the combination off of the safe; that the officer came in and got them, and held a gun on them until the patrol car came.

Appellant testified she was at a cafe that evening; that defendant Jones came in and asked if she would drive her car for him that evening to his home; that she did so; that the defendants came out and asked her to take them to Redlands because they wanted ''to see a man about a job.'' She then related the story as told by defendant Richards. She denied that she had planned any burglary with the defendants; claimed she did not know where she was going; denied that she knowingly aided and abetted them in the commission of the offenses; and denied any knowledge of the presence of the tools in the car. While on the witness stand she admitted she had been previously convicted of a felony, i.e., attempted grand theft, served a term of imprisonment, and was then on parole.

Appellant apparently aided her associates in the commission of the burglaries but it is her contention on this appeal that she did not abet them in so doing, and accordingly the facts did not bring her within the provisions of Penal Code, sections 31 and 971, as a principal in that she did not participate in the commission of the crime with knowledge of the unlawful intent and purpose of her associates, citing such cases as *People* v. *Compton,* 123 Cal. 403 [56 P. 44]; *People* v. *Davis,* 124 Cal. 42 [56 P. 1131]; and particularly *People* v. *Hill,* 77 Cal.App. 2d 287 [175 P.2d 45], where it is said that the mere presence of the accused at the scene of the crime does not essentially

establish his guilt as an abetter, but it must be established that the accused was present, that he actively aided and encouraged the felonies, and that he did so with the knowledge of the felonious intention.

Respondent fully points out where the Hill case is factually distinguishable. In the instant case there is evidence that appellant and defendant Jones first met at a café and discussed the matter of driving appellant's car on a mission. Appellant had borrowed the use of the car from a friend of hers. Apparently some arrangements were made whereby appellant was to have gasoline furnished to her by the perpetrators of the crime. She had the opportunity of seeing the sack containing the sledge hammer and other implements and tools that were to be used in the burglary. She waited for the defendants to perpetrate the first burglary or "job" and apparently saw them return with the sack and its contents. There is considerable discrepancy in appellant's statements as to the reason she was bringing the defendants to Redlands and as to her actions after she stopped and had let the defendants out to accomplish the second burglary. She claims they stopped a block or two away from the furniture store, and yet when it came time to look for the defendants and help in their escape, she drove up the alley and right to the rear of the furniture building where defendants entered. It was a peculiar hour of the morning for her to be assisting the defendants in hunting for a "job." The jury might well have believed that she had full knowledge of the intention of her associates and that she was aiding and abetting them, not only in the commission of the act, but aiding them in escaping from the scene of the crime after its commission. (*People* v. *Palmer,* 76 Cal.App.2d 679, 685 [173 P.2d 680].) ▮ There was no need for the associates to communicate their purpose to appellant if it was clear from the circumstances what their purpose was, and she still assisted them to accomplish it. (*People* v. *Bond,* 13 Cal. App. 175, 185 [109 P. 150] ; *People* v. *Le Grant,* 76 Cal.App.2d 148, 153 [172 P.2d 554].) ▮ There was no need to prove an actual conspiracy. (*People* v. *Turner,* 86 Cal.App.2d 791, 802 [195 P.2d 809].) ▮ The jury had the right to disbelieve the testimony of the appellant as to her claimed innocence where her statements were inconsistent and where her testimony was impeached by showing that she had been previously convicted of a felony. (Code Civ. Proc., § 2051.)

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.